# John Fulwider *vs.* Joseph Wilford, Jur.

*From Cedar, (agreed case of error.)*

When A. sells to B. a tract of land, puts him in possession, takes his notes for the money, and reserves the right to affirm or rescind the contract, he cannot bring his writ of Rright to recover the possession again of his lands, without surrendering to B. his notes or showing a readiness to place him *in statu quo.*

This was an action of Right, brought by Fulwider against Wilford, in the District Court of Cedar, to recover the possession of the east half of the south east quarter of section 11, town, 79, north in range 2 west; the west half of the south west quarter of section 12, in same township, and range; the south east quarter of section 13 in same township and range, and the south east quarter of section 14 in the same town. and range.

The defendant denied the right of demandant to the said lands, and damages for the detention, and prayed a jury, &c.

A trial by jury was waived, and the matter in controversy submitted to the court. And it was adjudged that the plaintiff was not the owner of, nor had a right to the immediate possession of the prop-

erty described in the plaintiff's declaration, and that the defendant recover his costs, &c.

The case was informally brought to this court upon the following agreed statement of facts:

" Writ of Right under the statute of 29th December, 1838, commenced 8th February, 1841, and tried May term 1842, as by the transcript.

" On the trial, which was submitted to the court, on both the facts and the law, the demandant offered in evidence, a deed from William Miller to John Fulwider, conveying the lands claimed, dated 9th May 1840, and recorded 25th July, 1840. A deed from R. B. Barrett, by J. A. Barrett to W. Miller, conveying the same lands, dated 28th Jan. 1840, and recorded Feb. 15, 1840.

" Patents, No. 69, 70, 108 & 109 issued to, R. F. Barrett. The papers in a former suit of William Miller vs. Joseph Wilford, Jun., to show notice in Wilford to Miller's claim. This suit was commenced 7th March 1840, for the same land, before Miller's conveyance to Fulwider, and discontinued before the commencement of the present suit.

" The land for which this suit is brought is the same for which certificates issued to R. F. Barrett, dated 6th November, 1838, and on which the patents here exhibited, issued. The respondent, at the time of the bringing of this suit, was in the occupancy of the land in such capacity as to subject him to this suit, and is still in possession, commencing June, 1837.

" The respondent introduced Wm. R. Whittlesey, who testified, that ' at the time a mortgage was given by Wilford to Miller, the description of the land was taken from the bonds of Barrett. This before the purchase of Miller from Barrett, and he, Miller, saw the bonds.'

" On cross examination: ' The bonds were in my possession sometime. I recorded the bonds and mortgage. I am satisfied he saw the bonds. The bonds were recorded before that time. There was some debate about bonds, in which Mr. Miller participated.'

" Charles Ford, who testified: ' I believe Fulwider knew of the bonds of Barrett to Wilford. I read them at Wilford's, and he was present in December '39 or January 1840. Not certain whether before or after he bought. Mr. Wilford was making some proposals to sell the land to Fulwider.'

" Four bonds of R. F. Barrett, by G. W. Harrison to J. Willford Jr., [title bonds for the lands] admitted under *the agreement*, as to their

execution.   Objected to by demandants attorney in respect to their legal effect.

" Demandant in reply, introduced the deposition of Lewis McKee, (who in reply to the interrogatory, ' do you know whether Richard F. Barrett, of Illinois, was in the town of Stepbenson, in Illinois, on the 12th, 1839, or any day thereafter, and if yea, what are your means of knowledge?'   Answered, ' I went to Stevenson, Illinois, on the 12th day of November, 1839, on business with Rich'd F. Barrett, and found him there.   My business was relative to some land I bought from him, in Dubuque, a year previous, and I went to make a payment which fell due at that time.   I saw him receive payment at the same time for other persons.   I am about to leave the territory.')

" Four parcels of notes given by Jas. Wilford, Jr., to R. F. Barrett, (twenty notes) at the time of receiving the bonds, were tendered by the plaintiff's attorney in open court, on the trial, to the defendant, and refused by him.

" Evidence was introduced by the plaintiff in relation to damages, and by the defendant in relation to improvements, as in the judges notes.

" The trial in March 1842, is to stand good.

" The court having taken the same under consideration, ruled the admission of the bonds in evidence and upon the whole case, adjudged that the demandant could not recover.

" The demandant filed his exceptions, marked J. [that on the trial of the cause which was submitted to the court, on both law and fact, the defendant offered in evidence certain bonds given by R. F. Barrett to him for the conveyance of the land claimed by the plaintiff, to the admission of which the plaintiff objected, but the court admitted them, to which ruling the plaintiff excepted.   The court also ruled, that the plaintiff could not recover, to which the plaintiff excepted.]

" The agreement marked K. was made by the attorneys at the trial, (an agreement to admit certain deeds and papers, as genuine.)

" This cause is to go to the Supreme Court upon this statement, and the accompanying papers, as referred to without any other form or process required by law, and to stand as though taken up on regular process.                    " W. G. WOODWARD, for plaintiff.
                    " R. P. LOWE, for defendant. "


Per Curiam, Mason, Chief Justice.—The actual occupancy of the land by Wilford is notice to all the world of his interest there ; Daniels

vs. Davison, 16 Vesey 252 ; 4 Kent, 179. Independent then, of actual notice to Fulwider, he stands in the place of Barrett, possessing no more rights and subject to the same liabilities. Barrett & Wilford entered into a contract by which the latter was to pay a certain amount of money at certain specified times, and the former was to execute a sufficient conveyance for the land in controversy when the money was so paid. But if the money was not so paid, Barrett reserved to himself the right to affirm or rescind the contract of sale.

Under these circumstances it is plausibly contended, that Barret should have notified Wilford of his election to disaffirm the contract before he could institute a suit for the purpose of putting him out of possession. But it will not become necessary to decide that question now.

The promise on the part of Wilford, as above stated, was embodied in five promissory notes. These were delivered to Barrett, and Wilford was put into possession of the land. I feel satisfied that Barrett or his assignee ought not to be allowed to maintain his action of right, before he had not only given Wilford notice of his election, but had also surrendered up the promissory notes aforesaid, or at least showed a readiness to surrender them. Until that time, Wilford could not know whether the land was his or not. Barrett could only be permitted to rescind the contract by showing Wilford that his notes had not been negotiated, and that he might therefore safely surrender the land. The law will not allow a party to be sued while he has not the means of knowing that he is liable, or at least while the means of that knowledge are exclusively in the possession of the opposite party. Before Wilford was dispossessed of his land, he ought to have been shown that he was not also liable on his notes.

The case of Maynard's lessee vs. Cable, Wright's Ohio Reports, 18, cited by defendant's counsel, seems to sustain this view of the case. There, the parties had exchanged lands, with an agreement to execute deeds of conveyance within six months. At the end of that time, Cable being unable to comply with his contract, Maynard instituted his action of ejectment, without offering to restore the land he had received in exchange or giving any notice of the rescision of the contract. The court in that case, say : " The entry of the defendant was not tortious but lawful. His covenant to convey is outstanding and no means have been taken by restoring the consideration or otherwise to rescind or annul the contract. The filing the declaration in ejectment does not in our opinion rescind the contract. In this class of cases some steps should be taken to determine the lawful possession of the defendant,

some demand or notice should be given to the tenant before suit is brought, and so are the authorities."

The present seems to me entirely a parallel case. Instead of an exchange of lands as in the case cited, lands were exchanged for negotiable promissory notes, accompanied by an exchange of possession. The notes were quite as available property as land itself, and the necessity of restoring them before commencing suit seems quite as great as in the case from the Ohio Reports.

The authorities cited by the counsel for the plaintiff in error on this point, do not sustain the position they assume. Those from the English Common Law are most nearly in point of any I have been able to examine. In the case of Hawden vs. _____, 26 E. C. L. 8, it was decided that where a bill of exchange was given for goods, an action might be brought for goods sold without producing the bill of exchange at the trial, such bill then lying produced in the hands of the plaintiff's agent. The same case in a different shape with the same decision is found in 17 E. C. L. 151. The English practice in these cases appears to be, to give judgment for the plaintiff, and then the defendant may pay the money into court and move for a stay of the execution, until the bills are delivered up. Unless these decisions are to be regarded as founded upon peculiar grounds, they certainly are not followed by the courts in the United States generally. The general rule here is that the plaintiff may sue for the consideration of a note or bill but they must in that case be surrendered up on the trial. 1 Johns. 34; 8 Johns. 149; 10 Johns. 105; 8 Cowen 77.

But however such a question may be decided, it ought hardly to effect this case. To sue for the consideration money arising from the sale of property is very different from an action to obtain a repossession of the property itself. The one is founded upon an affirmance, the other upon a rescision of the contract of sale. No person should be permitted to rescind a contract without at least a proffer to restore the advantages he has derived from that contract.

It will not be necessary therefore to examine the other points in the case. I am of the opinion that the decision below was correct and that the judgment should be affirmed.